**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WANDA COLON, as the Administrator of the Estate of Cesar Munive, | ) ) ) | |
| Plaintiff, | ) ) | 12 C 5481 |
| v. | ) ) | Judge Jorge L. Alonso |
| TOWN OF CICERO and CICERO POLICE OFFICER DONALD GARRITY, | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, the Administrator of the Estate of Cesar Munive, sues the Town of Cicero for, among other things, negligent hiring of defendant Garrity. The case is before the Court on defendant Garrity's objections to one of Magistrate Judge Schenkier's orders and Cicero's Federal Rule of Civil Procedure 56 motion for summary judgment on the negligent hiring claims (Counts VIII and IX). For the reasons set forth below, the Court overrules Garrity's objections to Judge Schenkier's order and grants Cicero's motion.

### Objections to Judge Schenkier's Order

At his deposition, defendant Garrity invoked his Fifth Amendment right against self-incrimination and refused to answer questions about the truthfulness of forms he completed in connection with psychological testing Cicero required him to undergo before hiring him as a police officer. Judge Schenkier granted defendants' motion to compel Garrity to answer the questions and denied Garrity's subsequent motion to reconsider. Garrity objects to the latter decision, arguing that it was based on a misapprehension of the facts and the law.

The Court disagrees. Judge Schenkier held that Garrity had not shown a reasonable fear of being prosecuted for forgery, the only (non-time-barred) offense that could possibly arise from his alleged conduct, because that conduct did not satisfy all of the elements of the offense. *See* 720 Ill. Comp. Stat. 5/17-3(a) ("A person commits forgery when, with intent to defraud, he or she knowingly: (1) makes a false document or alters any document to make it false and that document is apparently capable of defrauding another . . . ."). One of the missing elements, Judge Schenkier said, was that the falsified document be "'capable of defrauding'" another:

> [I]n defining what is meant by "capable of defrauding," the . . . court [in *People v. Brown*, 1 N.E.3d 888 (Ill. 2013)] explained that the question was whether a reasonable person might be deceived into accepting the document as genuine. *Brown*, 1 N.E.3d at 897. Mr. Garrity makes no argument that his employment application was not "genuine." Regardless of whether it contained false information, the application was indeed a real (not bogus) application and it was signed by Mr. Garrity in his own name.

(8/21/15 Mem. Op. & Order at 6); *see Brown*, 1 N.E.3d at 897 ("[T]he test of whether a forged document is apparently capable of defrauding another is whether a reasonable person might be deceived into accepting the document as genuine.") (citation omitted). Given the clear standard set forth in *Brown* and the fact that Garrity does not contend that his application materials were not genuine, Judge Schenkier's ruling that Garrity does not have a reasonable fear of being prosecuted for forgery is not erroneous. Therefore, the Court overrules Garrity's objections to Judge Schenkier's order.

**Summary Judgment**

**Facts**

The first step in applying for a job as a Cicero police officer is to pick up an application from the Town's Police and Fire Commission ("Commission"), the President of which is Anthony Iniquez. (Def.'s Ex. 8, Iniquez Dep. at 5, 35-36.) Once the application is returned with all documents completed, the applicant is given a date for a mandatory orientation meeting. (*Id.* at 36-37.) After the orientation, the applicant is given a written exam and an agility test, and is interviewed by an outside firm Cicero hired, Research Management Associates, which is composed of current and retired police chiefs. (*Id.* at 37; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 16-17.) The test and interview scores are then tabulated and a score ranking list is generated. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10.)

Once the list is finalized, the Commission waits for a request for a hiring from the police department and then contacts applicants in the order listed to set up psychological testing, polygraph testing, background checks, drug screening, fingerprinting, and physical examinations. (*Id.*) The psychological testing is performed by another outside firm, Public Personnel Institute ("PPI"). (*Id.* ¶ 14.) The polygraph testing and background checks are performed by a third outside firm, Theodore Polygraph Service ("TPS"). (*Id.* ¶ 12.)

Though the Commission delegates much of the application process to the outside firms, Iniquez reviews the applications "with an eye toward issues involving moral turpitude." (*Id.* ¶ 18.)[1]

---

[1] Plaintiff denies a portion of this fact statement but not the facts recited here.

In addition, the Commission reviews the polygraph test results, has candidates fingerprinted, and reviews a state report generated by the fingerprinting. (*Id.* ¶¶ 19, 21.)[2]

In September 2011, Garrity filled out an application to be a Cicero police officer. (*See* Pl.'s Ex. E, Application.) One of the questions was: "Have you ever been dismissed, asked to resign, or been suspended from any position you have held? If 'YES' explain." (*Id.* at TOC 2676.) Garrity checked the "No" box and signed an affirmation that states: "I Donald Garrity do swear and affirm that the information I have provided in the application for position of police officer with the Town of Cicero is true and factual to the best of my knowledge." (*Id.* at TOC 2676, 2682.)

Subsequently, Garrity went to PPI for a psychological assessment. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 26.) PPI's report of assessment on Garrity states that: (1) his score of 4 on a 5-point scale rendered him qualified; (2) his "primary assets outweigh his limitations"; (3) "he can be favorably recommended for employment from a psychological perspective"; (4) he "should be viewed as well suited for a position with the Cicero Police Department"; and (5) "[h]e should demonstrate proper judgment on the job." (Def.'s Ex. 14, PPI Report at 2-4) (emphasis omitted). Cicero did not inquire into Garrity's medical history because it believed PPI's testing would reveal any mental illness. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 59.)

Garrity also took a polygraph test administered by TPS. (*Id.* ¶ 52.) The Commission does not know what questions were asked during the polygraph examination, but Iniquez assumes they were questions about the answers Garrity gave on his job application. (*Id.*)

---

[2]Plaintiff denies that Cicero fingerprints applicants or reviews a state report generated by the fingerprinting because Garrity's file does not reflect a fingerprint report. (*See id.*) However, absent evidence that such reports are normally kept in applicants' files or testimony from Garrity or another applicant that he/they were not fingerprinted, the absence of a report from Garrity's file does not support the inference that Cicero did not fingerprint applicants.

Garrity says that, before Cicero hired him, he told Iniquez that he had been asked to resign from the Berwyn Police Department because he had asked the Police Chief of North Riverside to get him out of a speeding ticket he had received there. (*Id.* ¶ 49.) Iniquez says Garrity told him he left the Berwyn Police Department because its Interim Superintendent did not like him. (Def.'s LR 56.1(a) Stmt. ¶ 49.) It is undisputed, however, that Iniquez contacted the Police Chief of Berwyn, who told Iniquez that Garrity's file was sealed. (*Id.* ¶ 50.)[3]

On March 27, 2012, Cicero hired Garrity as a police officer. (*See* Def.'s Ex. 16, Oath.)

On July 5, 2012, when he was on duty in Cicero, Garrity shot and killed Cesar Munive. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.)

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Cicero argues that the Tort Immunity Act shields it from plaintiff's negligent hiring claims. *See* 745 Ill. Comp. Stat. 10/2-201 ("[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act

---

[3] *See* n.1.

5

or omission in determining policy when acting in the exercise of such discretion even though abused."); 745 Ill. Comp. Stat. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Section 2-201 applies only if the alleged act or omission, here, the hiring of Garrity as a police officer, was both "a determination of policy and an exercise of discretion." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852 (Ill. 2001). A policy determination is a decision that "require[s] the governmental entity or employee to balance competing interests and . . . make a judgment call as to what solutions will best serve each of those interests." *Id.* A discretionary act is one that is "'unique to a particular public office,'" unlike a ministerial act, which "'a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the [person's] discretion as to the propriety of the act.'" *Id.* (quoting *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995)).

The Illinois Appellate Court applied these principles to a claim of negligent hiring of a police officer in *Johnson v. Mers*, 664 N.E.2d 668 (Ill App. Ct. 1996). The plaintiffs in that case sought to hold the Village of Island Lake liable for hiring a police officer who shot her boyfriend during an argument. *Id.* at 671. The court held that the Village was immune from the claim:

> In the case at bar, plaintiffs allege liability based on the [Island Lake] PD's hiring of a police officer. Such an action is inherently discretionary and is not performed on a given state of facts in a prescribed manner. In hiring a police officer, there are many factors which a police department must consider and evaluate. The hiring decision is not one which is made when certain specific factors are present, with no regard to the hiring officials' discretion.

6

> Plaintiffs argue, however, that Island Lake's actions in hiring Rena were ministerial. In support thereof, plaintiffs contend that once Island Lake devised a hiring plan the ILPD no longer had discretion in whom it would hire. Rather, plaintiffs argue that carrying out the plan was a ministerial act for which liability could be imposed.
>
> We disagree. While Island Lake did devise a hiring plan which would include the application process, a polygraph examination, psychological testing, physical testing, and interviews, the decision to hire an officer ultimately required the exercise of discretion. *The decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the Immunity Act.*

*Id.* at 675 (emphasis added); *see Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 922 (7th Cir. 2015) ("[T]he Illinois state courts have determined that '[t]he decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the Immunity Act.'") (quoting *Johnson*, 664 N.E.2d at 675); *Doe v. Roe*, No. 12 C 9213, 2013 WL 2421771, at *7 (N.D. Ill. June 3, 2013) ("Illinois courts have held that hiring and firing are discretionary decisions, requiring a balancing of many different competing considerations.")

Despite its similarity to this case, plaintiff urges the court to disregard *Johnson* in favor of *Valentino v. Village of South Chicago Heights*, 575 F.3d 664 (7th Cir. 2009). The plaintiff in that case was an employee who alleged that she had been fired by the Village of South Chicago Heights in retaliation for her public statements about its ghost-payrolling practices. *Id.* at 668-69. The district court held that § 2-201 immunized the Village from plaintiff's claim for retaliatory discharge because her firing, which the Village said was for taking employee sign-in sheets, was both a policy determination and an act of discretion. *Id.* at 669. The Seventh Circuit disagreed:

> Defendants' attempt to argue that [Mayor] Owen's decision to fire Valentino was a "policy decision" is futile. The Village argues in one breath that [Mayor] Owen's series of hirings and firings for the Village do not mean that he is a policymaker [for purposes of 42 U.S.C. § 1983], and in another breath that his decision to fire Valentino was a policy decision. . . . [Mayor] Owen's one-time decision to fire one employee, Valentino, does not amount to a "judgment call between competing

7

interests." In fact, we are at a loss to identify any competing interests at all. Rather, [Mayor] Owen either made a one-time decision to fire Valentino because she copied the sign-in sheets or because she spoke out against the Village's practice of ghost payrolling, or some combination thereof. The Village offers no evidence that it had a policy against copying the sign-in sheets either before or after Valentino's termination. Even if such a policy did exist, we cannot see how the decision to create it might involve competing interests and judgment calls that would meet the Illinois courts' definition of a "policy decision." . . . [Because], the decision to fire Valentino does not amount to a policy decision as defined by the Illinois courts[,] . . . . the Village is not entitled to immunity under section 2-201.

*Id.* at 679-80.

However, unlike the Mayor in *Valentino*, the Commission here is, as a matter of law, a policymaker with respect to police hiring decisions. *See* Cicero, Ill., Code § 50-33(b) ("The power of appointment, discharge or suspension of all other officers of the Department of Police shall be in the Board of Fire and Police Commissioners."); *id.* § 2-783 (stating that "[t]he board of fire and police commissioners shall make the rules relative to the appointment and removal of members of the fire department [and] department of police"). Moreover, it is undisputed that the Commission designed the hiring process, chose the weight assigned to each component, and the method by which successful applicants would be chosen from the final eligibility list. (*See* Pl.'s Ex. T, Commission Rules and Regulations.) It is also undisputed that, though the Commission delegates testing and background checks to outside firms, it still reviews the applications, the polygraph results, and the state fingerprint report before deciding whom to hire. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 18-19, 21.)[4] In short, the undisputed facts and state law establish that Cicero's hiring of Garrity was a determination of policy and an exercise of discretion. Accordingly, Cicero is immune from plaintiff's Count VIII and IX claims for negligent hiring.

---

[4]*See* nn.1 & 2.

**Conclusion**

For the reasons set forth above, the Court overrules plaintiff's objections to Magistrate Judge Schenkier's Order [302] and grants Cicero's motion for summary judgment on Counts VIII and IX of the third amended complaint [292].

**SO ORDERED.**  **ENTERED: October 19, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**