# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WANDA COLON, as the Administrator of the Estate of Cesar Munive, | ) ) ) | |
| Plaintiff, | ) ) | 12 C 5481 |
| v. | ) ) | Judge Jorge L. Alonso |
| TOWN OF CICERO and CICERO POLICE OFFICER DONALD GARRITY, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On October 19, 2015, the Court entered summary judgment for Cicero on plaintiff's negligent hiring and supervision claims on the grounds that §§ 2-109 and 2-201 of the Illinois Tort Immunity Act gave Cicero immunity from the claim. Having reached that conclusion, the Court did not consider the other arguments Cicero proffered in support of its motion. On December 1, 2015, the Court reconsidered its conclusion that §§ 2-109 and 2-201 gave Cicero immunity and reinstated plaintiff's negligent hiring claims. The Court now considers the arguments Cicero offered to support its motion for summary judgment that the Court did not previously consider.

Cicero's first argument is that § 4-102 of the Tort Immunity Act shields it from plaintiff's negligent hiring claims. In relevant part, that section provides:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. . . .

745 Ill. Comp. Stat. 10/4-102. Given the statute's plain language, it seems unlikely it would apply to claims of negligent supervision.

Yet, in *DeSmet ex rel. Estate of Hays v. County of Rock Island*, 848 N.E.2d 1030 (Ill. 2006), the Illinois Supreme Court held that it did. In that case, a motorist reported to the Clerk of the Village of Orion that she had seen a car drive into a ditch at a high rate of speed. *Id.* at 1034. The Clerk passed the information onto local police authorities, none of whom investigated. *Id.* at 1034-35. Three days later, the body of plaintiff's decedent was found lying outside of her car in the ditch about which the motorist had called. *Id.* at 1035. Thereafter, plaintiff sued the police authorities, alleging, among other things, that they had "failed to [properly] train and supervise [law enforcement] employees." *Id.* at 1041 (internal quotation marks and alterations omitted). The trial and appellate courts held that the failure to supervise claim was barred by § 4-102. *Id.* at 1035.

The Supreme Court agreed:

> [Plaintiff's] allegations implicate the structural adequacy of police protection services that defendants provided to the general public. In essence, plaintiff alleges that those inadequacies resulted in a failure to obtain sufficient information concerning decedent's motor vehicle accident, a failure to timely dispatch appropriate law enforcement personnel, and a failure to timely dispatch emergency medical personnel. Thus, plaintiff's allegations implicate the adequacy of services provided to the general public–services that are intended to determine whether and when police officers will be dispatched into the community in response to specific calls for assistance.

*Id.* at 1041 (internal quotation marks and alterations omitted).

The appellate court echoed *DeSmet* in *Doe v. Village of Schaumburg*, 955 N.E.2d 566 (Ill. App. Ct. 2011). Plaintiffs in that case were minors who had been sexually assaulted by another student while all of them were attending summer school at Hoffman Estates High School. *Id.* at 568. Before assaulting plaintiffs, the assailant had been arrested for aggravated criminal sexual assault of a minor. *Id.* Though the arresting officers knew the assailant was attending summer school at a local high school and the police department had agreed to tell the school district when a minor

2

enrolled in one of its schools was taken into custody, the officers did not report the assailant's arrest to the school district. *Id.* The plaintiff-victims sued the police department for, among other things, "fail[ing] to properly train and supervise their employees . . . regarding the requirements of the reciprocal reporting agreements with [the school district]." *Id.* at 571. The Court held that the claim was barred by § 4-102: "The failure to properly train and supervise employees, or to have in force procedures to ensure the adequate performance of their duties, 'implicat[e] the structural adequacy of police protection services' provided by defendants, and such failure is immune from liability under section 4-102." *Id.* at 572 (quoting *DeSmet*, 848 N.E.2d at 1041).

The claims in both *DeSmet* and *Doe* arose from alleged failures to provide police services, the failure to investigate an accident and the failure to report an arrest, respectively, which, plaintiff says, distinguishes them from this case. The Court agrees. The *DeSmet* court's statement that § 4-102 bars claims "implicat[ing] the structural adequacy of police protection services" has to be understood in the context of the statutory language; that is, claims arising from the failure to provide police service that "implicate the structural adequacy of police protection services" are barred by § 4-102. *See LaPorta v. City of Chi.*, 14 C 9665, 2015 WL 1888810, at *3 (N.D. Ill. April 24, 2015) (not citing *DeSmet* but holding that a negligent hiring claim was not barred by § 4-102 because "[a] city's duty to [sic] 'to refrain from hiring or retaining an employee who is a threat to third persons to whom the employee is exposed' exists independently of its duty to provide police protection."). *But see Crowell v. City of Chi.*, No. 14 C 565, 2014 WL 3585300, at *5 (N.D. Ill. July 21, 2014) (upholding, on law-of-the-case grounds, a state court's dismissal of a negligent hiring claim as barred by § 4-102 because "[t]he Illinois Supreme Court has broadly interpreted [§ 4-102] to immunize municipalities from claims that implicate the manner in which they go about establishing

3

police departments and providing police services" and "[h]iring, evaluating, and firing police officers is at the core of establishing a police department and providing police services") (citing *DeSmet*, 848 N.E.2d at 1042). Because plaintiff's negligent hiring and supervision claims do not arise from an alleged failure to provide police protection, they are not barred by § 4-102.

Alternatively, Cicero argues that plaintiff has not created a triable fact issue as to the negligent hiring claim. To do so, plaintiff must offer evidence that suggests: "(1) [Cicero] knew or should have known that [Garrity] had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of [Garrity's] hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). Cicero contends that there is no evidence that it knew or should have known that Garrity posed any threat to civilians at the time it hired him. However, viewed favorably to plaintiff, the record suggests that, before it hired Garrity, Cicero knew or should have known that: (1) he had shot a suspect when he was a Berwyn police officer; (2) he had been asked to resign from the Berwyn Police Department ("BPD") and the BPD had sealed Garrity's file; (3) Garrity lied about the reason for his resignation from the BPD on his Cicero employment application; and (4) Garrity suffers from PTSD, a condition which "substantially increases the likelihood of violent reactions," and anxiety disorder, and was taking medications for them that "impairs judgment and interferes with decision making." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 49-50; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 9, 22, 32, 33; *id.*, Ex. E, Employment Application § 41 (stating "Family" as the reason for leaving the BPD).) Thus, there is a triable fact issue with respect to the first and second elements.

4

Cicero also contends that there is no material fact issue as to proximate causation, which it says "includes a requirement [that] the employer 'know of the need' to control and have 'opportunity for exercising control over the employee.'" (Cicero Mem. Law Supp. Mot. Summ. J. at 12) (quoting *Doe v. Boy Scouts of Am.*, 4 N.E.3d 550, 561 (Ill. App. Ct. 2014) ("*BSA*")). In fact, *BSA* says those elements must be present *only* if the alleged injury arises from an act outside the scope of employment, *see id.*, a situation not present here.

Proximate cause exists for acts taken within the scope of employment if "the *injury itself* . . . 'occurred by virtue of the [employee's] employment.'" *Id.* at 561 (emphasis in original) (quoting *Carter v. Skokie Detective Agency, Ltd.*, 628 N.E.2d 602, 604 (Ill. App. Ct. 1993)). In other words, "there must be a tangible connection between the employee's violent tendencies, the particular job he is hired to do, and the harm to the plaintiff." *Carter*, 628 N.E.2d at 606. Viewed favorably to plaintiff, the record suggests that Cicero made Garrity a police officer–though it knew or should have know that he shot a suspect when he was a BPD officer, was asked to resign from the BPD, and was receiving treatment for PTSD and anxiety disorder–and he shot and killed plaintiff's decedent while acting in that capacity. That is sufficient to create a triable fact issue as to proximate cause.[1]

## **Conclusion**

---

[1] The cases cited by Cicero do not dictate a different result. *See Strickland v. Commc'ns & Cable of Chi.*, 710 N.E.2d 55, 58 (Ill. App. Ct. 1999) (because a background check would not have revealed information suggesting that employee would rape a customer, cable company's failure to perform one was not the proximate cause of the rape); *Carter*, 628 N.E.2d at 604-06 (employer's negligent hiring of employee who, while off duty, murdered someone he met through his job, was not the proximate cause of the murder); *Escobar v. Madsen Constr. Co.*, 589 N.E.2d 639-40 (Ill. App. Ct. 1992) (employer's negligent hiring of employee who shot co-worker before work and off the job site was not the proximate cause of the shooting).

5

For the reasons set forth above, the Court rejects Cicero's alternative arguments in support of its motion for summary judgment on plaintiff's negligent hiring and supervision claims. The Court's December 1, 2015 order reinstating those claims against Cicero stands.

**SO ORDERED.**                **ENTERED: December 21, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**