# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WANDA MUNIVE, as ADMINISTRATOR of the ESTATE of CESAR MUNIVE, deceased, | ) ) ) ) | |
| | ) | No. 12 C 5481 |
| Plaintiff, | ) ) | District Judge Jorge L. Alonso |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| TOWN OF CICERO and CICERO POLICE OFFICER DONALD GARRITY, | ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

On July 5, 2012, Cicero Police Officer Donald Garrity was involved in an incident during which he shot and killed Cesar Munive. Based on that incident, plaintiff, the Administrator of the Estate of Cesar Munive, has sued defendants, the Town of Cicero ("Cicero") and Mr. Garrity, for, *inter alia*, wrongful death, excessive force, and (against Cicero only) negligent hiring. Currently before this Court is plaintiff's motion for evidentiary sanctions based upon discovery violations (doc. # 363). For the following reasons, we recommend that the district judge grant plaintiff's motion, and impose the sanctions we recommend below.

## I.

Defendants initially argue that plaintiff's motion for sanctions should be denied because she did not contact defendants to attempt to resolve this dispute before filing her motion for sanctions, in violation of Local Rule 37.2 (doc. # 384: Cicero's Resp. at 1, 6, 12; doc. # 378: Garrity's Resp. at 1-5, 9-10). Local Rule 37.2 requires an attorney to consult opposing counsel by telephone or in person to make a good faith attempt to resolve their differences before filing a

motion for discovery. However, "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). For example, an appropriate circumstance for excusing non-compliance with Local Rule 37.2 would be if it would have been futile; *i.e.*, if judicial intervention in the discovery dispute was unavoidable. *See CCC Info. Servs., Inc. v. Mitchell Int'l, Inc.*, No. 03 C 2695, 2006 WL 3486810, at *6 (N.D. Ill. Dec. 1, 2006); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 356 (N.D. Ill. 2005). However, the district court must "enforce[] or relax[]" the local rules equally as between the parties. *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 807 (N.D. Ill. 2014) (citing *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)).

We previously addressed this issue in open court during a hearing on August 11, 2016, after plaintiff moved for sanctions but before defendants filed their responses to the motion. As we explained at that time, none of the parties in this case have strictly complied with the applicable rules. Mr. Garrity filed a motion to strike without meeting and conferring with plaintiff first, and Cicero issued a subpoena without providing the required notice to plaintiff (doc. # 392: 08/11/2016 Tr. at 5-7). We do not endorse the parties' failure to follow the rules, and warn that they act at their peril when they disregard the rules. But, in lieu of sanctioning all three parties for these transgressions, we have determined in this instance to move past each of the parties' failure to adhere to the rules and to reach the merits of plaintiff's motion for sanctions (*Id.* at 6).

Moreover, it is evident from the extensive discovery battles in this case that any attempt to meet and confer would have been futile. Defendants have "steadfastly refused to provide information" that plaintiff sought in discovery, and defendants make the same arguments in

response to plaintiff's motion for sanctions that they have made in the past. *Rainey v. Metro. Water Reclamation Dist.*, No. 11 C 2594, 2012 WL 2192241, at *2 (N.D. Ill. June 14, 2012). Thus, we find that "[d]efendant[s] cannot seriously argue that it would have changed its position after an additional conference." *Id.*

## II.

Plaintiff argues that defendants should be sanctioned for their failure to disclose and produce discovery regarding Mr. Garrity's mental health history and treatment, specifically as it was revealed and considered during proceedings related to Mr. Garrity's application for disability pension benefits. Below, we describe the relevant discovery proceedings in this case.

Mr. Garrity was first deposed in this case on April 16, 2014. During the deposition, Mr. Garrity testified that he had lied on his employment application to the Cicero Police Department ("Cicero Police") when he wrote that he had never been reprimanded, suspended, or asked to resign from a previous employer, which included the Berwyn Police Department (doc. # 363: Pl.'s Mot., Ex. D: Garrity's 04/16/2014 Dep. at 315, 318-23). On August 2, 2014, Mr. Garrity applied for on-duty disability retirement pension benefits with the Cicero Police Pension Board ("Pension Board") (doc. # 393: Pl.'s Reply, Ex. E: Pension Bd. Decision and Order). On August 7, 2014, the Cicero Police Superintendent sent Mr. Garrity a letter attaching "prepared but as of yet unfiled disciplinary charges" against Mr. Garrity based on the revelation that Mr. Garrity had failed to disclose certain information on his application to the Cicero Police (doc. # 218: Pl.'s 12/22/2014 Am. Mot. to Compel; Ex. B: Letter to Mr. Garrity and attached disciplinary charges).[1] The letter stated that if Mr. Garrity should "seek to return to active employment with

---

[1] The Superintendent's letter was undated, but in an acknowledgement of the receipt of the letter, Mr. Garrity stated that he received the letter on August 7, 2014. The disciplinary charges and the acknowledgement of receipt of the letter were attached as an exhibit to a motion to compel plaintiff filed in December 2014, but not to the current motion for sanctions.

the Cicero Police Department, the enclosed charges will be entered against [Mr. Garrity] for adjudication," but that the Cicero Police would not interfere with Mr. Garrity's "request for a retirement disability pension with the Cicero Police Pension Board due to [his] diagnosis of Post-Traumatic Stress Disorder after the incidents of July 5, 2012" (Pl.'s Mot., Ex. B: Letter to Mr. Garrity).

On August 20, 2014, plaintiff learned of Mr. Garrity's application for pension benefits when Cicero produced the aforementioned letter (Pl.'s 12/22/2014 Am. Mot. to Compel at 3). The next day, plaintiff served discovery on both defendants seeking answers to interrogatories and requests to produce documents related to Mr. Garrity's request for a retirement disability pension, including Mr. Garrity's medical and psychological records (*Id.* at 4; *Id.*, Ex. C: Defs.' Resps. to Pl.'s 08/21/2014 discovery requests). Defendants objected to plaintiff's requests, and on October 1, 2014, plaintiff moved to compel defendants to respond to the discovery she served on August 21, 2014 (doc. # 179). During the next two months, Mr. Garrity filed motions to quash and bar subpoenas for discovery into Mr. Garrity's medical and mental health history (docs. ## 181, 200). On December 10, 2014, without ruling on these motions, the presiding judge referred the case to this Court for all discovery matters (doc. # 209).[2]

On December 22, 2014, plaintiff filed an amended motion to compel defendants to respond to her August 21, 2014 discovery requests, seeking in relevant part: "documents relating to Mr. Garrity's request for a retirement disability pension, including all medical opinions provided to the Pension Board on his behalf," and "correspondence between the Police Department and the Pension Board relating to Defendant Garrity's application" (Pl.'s 12/22/2014 Am. Mot. to Compel at 9-10). Plaintiff argued this discovery could show that Mr. Garrity was

---

[2]On October 16, 2014, the presiding judge found that all pending motions to compel and quash were moot because the parties had agreed to cooperate (doc. # 190). The motion to quash filed on November 20, 2014 (doc. # 200) was also referred to this Court (doc. # 209).

suffering from a mental impairment that "rendered him unfit to be a police officer prior to and . . . during the shooting itself," which would help prove her claim of negligent hiring and retention against Cicero and excessive force against Mr. Garrity (*Id.* at 1-2, 11).

On January 14, 2015, this Court granted plaintiff's motion to compel (doc. # 228: 01/14/2015 Order). At the hearing, we held that the three categories of materials that plaintiff sought were relevant to plaintiff's negligent hiring claim, and may shed light on Mr. Garrity's mental state at the time of his hiring and the shooting: (1) mental health records that pre-dated Cicero's hiring of Mr. Garrity, (2) mental health records from the period after Cicero hired Mr. Garrity, and (3) records related to Mr. Garrity's request for non-active and disability status (doc. # 235: 01/14/2015 Tr. at 31-33, 38-39). Neither Mr. Garrity nor Cicero filed an objection to this order with the district judge.

Subsequently, on January 21, 2015, the Court entered an agreed order giving the parties until March 20, 2015 to issue subpoenas and produce documents relating to Mr. Garrity's mental health, extending the close of fact discovery to April 20, 2015, and setting July 20, 2015 for the close of expert discovery (doc. # 232). On February 16, 2015, plaintiff served a document request on both defendants seeking:

> All documents pertaining to Defendant Garrity's request for sick leave and/or disability time-off and compensation pursuant to 5 ILCS 345/0.01, *et seq.*, (prior to his receiving a pension), including, but not limited to all documents submitted accompanying Defendant Garrity's application, "Employee's Report of Injury Form," periodic medical and psych reports, all medical and/or psychological records submitted by Defendant Garrity, or obtained by the Town or its agents, and any [*sic*] all notes prepared by any agent of the Town of Cicero in relation to Defendant Garrity's request for sick leave and/or disability time-off and compensation.

(Pl.'s Mot., Ex. G). That same day, plaintiff also served a subpoena on the Pension Board and, by agreement, this Court ordered the Pension Board to comply with the subpoena (doc. # 242:

03/02/2015 Order).[3] At a status hearing on March 17, 2015, the parties reported that discovery was proceeding according to schedule (doc. # 244: 03/17/2015 Tr. at 3-4), and on March 18, 2015, Mr. Garrity produced "post occurrence treatment records from Linden Oaks [hospital] and Edwards hospital" (Pl.'s Reply, Ex. J).

Plaintiff took a second deposition of Mr. Garrity on April 28, 2015.[4] Mr. Garrity testified that he had not communicated with anyone from the Pension Board since filing his application, but when he was contacted about voting for an open position on the Pension Board, Mr. Garrity asked the Pension Board member about the status of his disability application and learned that the Board was looking for a doctor to interview him (Garrity's Resp., Ex. 6: Garrity's 04/28/2015 Dep. Tr. at 18, 21). Mr. Garrity further testified that since he had filed his pension application, he had not been interviewed by anyone from the Pension Board and had not seen a physician at the request of the Pension Board (Id. at 22).

On April 29, 2015, plaintiff deposed Cicero Police Officer and Pension Board member Thomas Kuratko, who testified as a Rule 30(b)(6) witness on behalf of the Pension Board (Garrity's Resp., Ex. 8: Kuratko Dep.). Mr. Kuratko testified, in relevant part, that Mr. Garrity's pension application was "on hold" because the Pension Board was "still in the process of gathering information" and awaiting responses to the Pension Board's subpoenas (Id. at 19-20).

From April through June 2015, defendants continued to resist plaintiff's attempts to obtain discovery on various matters related to Mr. Garrity's medical and mental health records

---

[3]Neither the parties nor the record disclose what discovery plaintiff sought in this subpoena or which documents the Pension Board produced in response to the subpoena.

[4]At the beginning of his deposition, Mr. Garrity testified that he had taken medication for PTSD, anxiety and depression that morning (Garrity's Resp., Ex. 6: Garrity's 04/28/2015 Dep. Tr. at 7-8). Plaintiff's counsel asked whether he was competent to say when his medications affected his ability to understand or answer any questions (Id.). Mr. Garrity replied that only a doctor or pharmacist would know if or when his medications interfered with his ability to understand or answer questions (Id.). The deposition continued; Mr. Garrity never stated that his medications affected his ability to answer any questions, or that he was unable to understand the questions put to him.

(*see, e.g.*, docs. ## 245, 247, 260, 265, 272). We denied multiple motions by Mr. Garrity to quash subpoenas plaintiff served on third parties to obtain information relating to Mr. Garrity's medical treatment and history (*see, e.g.*, doc. # 254: 04/28/2015 Order; doc. # 228: 01/14/2015 Order). Expert discovery continued, and its end date was extended to August 20, 2015 (doc. # 277). On December 15, 2015, we terminated the referral upon the parties' report that all discovery had been completed (doc. # 342).

Thereafter, on April 1, 2016, plaintiff's counsel wrote a letter to both defendants' counsel requesting that they supplement their prior discovery responses pursuant to Rule 26(e) "with documents and/or information regarding the following: Defendant Garrity's complete personnel file maintained by the Town of Cicero; additional medical reports submitted by Defendant Garrity and/or his providers in support of his pension disability application; and, the status of Defendant Garrity's employment with the Town of Cicero" (Pl.'s Mot., Ex. M). On April 14, 2016, Cicero produced nine pages of documents, including: (1) a letter from the Cicero Police Superintendent to Mr. Garrity dated July 2, 2015, acknowledging that his pension application was still pending, and stating that Cicero would "continue to delay filing termination charges against [him] pending the outcome of [his] case before the Pension board" (Pl.'s Mot., Ex. N: TOC004221); and (2) a notice from the Pension Board to the Cicero Police, Human Resources and Police/Fire Commission dated September 2, 2015, stating that on August 14, 2015, the Pension Board had held a hearing on Mr. Garrity's pension application, and had decided to grant him a Duty Disability Benefit effective July 10, 2015 (*Id.*, TOC004218). Mr. Garrity did not produce any documents in response to plaintiff's April 1, 2016 letter.

Plaintiff states (without contradiction) that prior to Cicero's April 14, 2016 production, she had not been aware that Mr. Garrity's application for pension benefits had moved forward

since Mr. Kuratko's April 29, 2015 deposition.[5] On April 22, 2016, plaintiff asked the Pension Board to supplement its production pursuant to the February 2015 subpoena. In response, on April 27, 2016, the Pension Board produced 18 pages of documents. That production consisted of the following reports on mental health examinations of Mr. Garrity, each addressed to the Pension Board: (1) a June 9, 2015 report by Jeffrey Pua, M.D., Mr. Garrity's treating physician, and a certificate stating that he had examined Mr. Garrity on April 9, 2015 pursuant to the Illinois Pension Code (Pl.'s Mot., Ex. O at 092-093); (2) a June 11, 2015 report by psychiatrist Robert A. Reff, M.D., and a certificate stating that he had examined Mr. Garrity that day pursuant to the Illinois Pension Code (*Id.* at 094-100); and (3) a June 17, 2015 report by psychiatrist Cathy Frank, M.D., and a certificate stating that she had examined Mr. Garrity that day pursuant to the Illinois Pension Code (*Id.* at 101-108).[6] Plaintiff had not seen these documents previously; this was the first time that plaintiff was informed that Drs. Frank and Reff had examined Mr. Garrity, or had any involvement in the Pension Board proceedings (Pl.'s Mot. at 13).

On June 16, 2016, plaintiff served Mr. Garrity with interrogatories and requests to admit. Mr. Garrity moved to strike them (doc. # 354). Nevertheless, on June 30, 2016, Mr. Garrity produced discovery which had never before been produced to plaintiff, including the following two documents. One document was a letter dated June 20, 2015, from the Pension Board's

---

[5]Plaintiff argues that Mr. Kuratko testified that Mr. Garrity's application was placed on an "indefinite" or "official[]" "hold" (Pl.'s Mot. at 5, 9). We disagree with plaintiff's interpretation of Mr. Kuratko's testimony; Mr. Kuratko was not asked, and did not testify, as to how long he expected the application to remain on hold. But, it is undisputed that prior to April 14, 2016, neither defendant informed plaintiff of any Pension Board proceedings that occurred after April 2015.

[6]Dr. Pua's examination took place 19 days before Mr. Garrity's second deposition, at which Mr. Garrity testified that he had not been interviewed by anyone from the Pension Board, and had not seen a physician at the request of the Pension Board (Garrity's 04/28/2015 Dep. Tr. at 22). Despite Mr. Garrity's later explanation that his appointment with Dr. Pua was previously scheduled as a routine medical examination (*see* Pl.'s Reply, Ex. A: Garrity's Resps. to Pl.'s Discovery at Interrog. No. 4), the Pension Board's written Decision and Order states that the Board requested that Mr. Garrity be examined by Dr. Pua (Pl.'s Mot., Ex. S: Pension Decision at 9).

attorney, Charles Atwell, to Mr. Garrity and attorney George S. Spataro of the Del Galdo Law Group, LLC (an attorney representing Cicero, which had intervened in the Pension Board proceedings), attaching a certified notice of hearing from the Pension Board on Mr. Garrity's application for pension benefits (Pl.'s Reply, Ex. C). The notice was sent to Mr. Garrity and Mr. Spataro, and stated that on July 29, 2015, a "public hearing will be held to receive evidence" concerning Mr. Garrity's application (*Id.*).

The other document was a written Pension Board Decision and Order ("Pension Decision"), dated June 14, 2016, granting Mr. Garrity an on-duty disability retirement pension (Pl.'s Mot., Ex. S: Pension Decision). Plaintiff contends that the Pension Decision revealed to her for the first time that: (1) Cicero had filed a petition to intervene in the Pension Board proceedings on July 20, 2015, which was granted after the Pension Board heard argument on the matter on July 29, 2015; (2) on August 14, 2015, the Pension Board held a hearing on Mr. Garrity's application; and (3) Mr. Garrity's pension application was amended to seek, in the alternative, a "not on duty" disability pension benefit in addition to a "line of duty" disability pension benefit (Pl.'s Mot. at 15-16).

On July 8, 2016, concurrently with her response opposing Mr. Garrity's motion to strike (doc. # 362), plaintiff filed the motion for evidentiary sanctions currently before this Court. On July 21, 2016, after hearing argument, we denied Mr. Garrity's motion to strike as moot after plaintiff withdrew the interrogatories and requests to admit (doc. # 371). By agreement, the Court gave plaintiff's counsel leave to serve substitute interrogatories on Mr. Garrity and Cicero by July 22, 2016, with defendants' responses due by August 5, 2016 (*Id.*). On August 5, 2016, both defendants served responses to plaintiff's interrogatories. In addition, on that date, Cicero

moved to strike plaintiff's motion for sanctions, or in the alternative for leave to issue a subpoena on the Pension Board (doc. # 372). On August 11, 2016, we denied Cicero's motion (doc. # 376).

On August 18, 2016 (one day before defendants filed their responses to plaintiff's motion for sanctions), Cicero produced several hundred pages of documents related to the Pension Board proceedings. Cicero's counsel explained in a letter to plaintiff's attorney that those documents "were obtained directly from George S. Spataro's workers' compensation file that he had in the matter of *Garrity v. The Town of Cicero*" (Pl.'s Reply, Ex. G). Cicero's counsel further stated that "Mr. Spataro is a contract attorney at our firm and handles workers' compensation matters," and that "these documents were sent directly to Mr. Spataro from the Pension Board's attorney" (*Id.*). Cicero offered no explanation of why its discovery responses on April 14, 2016 failed to include these documents, or why it asserted on August 5, 2016 -- in response to plaintiff's July 22, 2016 interrogatories -- that "[t]here are no additional documents to produce in the Town's possession that have not already been produced" (Pl.'s Reply, Ex. F: Cicero's Resps. to Interrogs. Nos. 2, 4, 5, 6, 8, 12).

Plaintiff states that the documents produced on August 18, 2016 included a copy of Cicero's motion to intervene in the Pension Board proceedings and a copy of the Pension Board Decision and Order (Pl.'s Reply at 13). The Pension Decisions produced by Mr. Garrity and by Cicero are identical in all respects, except for the signature pages. The copy of the Pension Decision that Mr. Garrity produced on June 30, 2016 was dated June 14, 2016, and Mr. Garrity claimed to have "just recently received" it (Garrity's Resp. at 22). By contrast, the copy produced by Cicero is dated January 18, 2016. And, unlike the version produced by Mr. Garrity, this copy of the Pension Decision was accompanied by a notice of filing sent to Mr. Garrity and Mr. Spataro dated January 18, 2016, and a cover letter sent from Mr. Atwell, the Pension

Board's attorney, to Mr. Garrity and Mr. Spataro dated January 21, 2016 (Pl.'s Reply, Ex. E: 01/18/2016 Pension Decision). Defendants do not address the discrepancy, which plaintiff describes as "curious" (Pl.'s Reply at 13).

III.

In her motion for sanctions, plaintiff contends that defendants violated their duty under Federal Rule of Civil Procedure 26 by not timely producing the discovery plaintiff received in April, June and August 2016, which we will refer to as the "Pension-related discovery." Rule 26(e) requires that:

> A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1). We agree with plaintiff that both defendants failed to satisfy their obligations under Rule 26(e).

Plainly, defendants' responses to plaintiff's discovery requests in 2014 and 2015 were not complete without supplementing them with the additional reports and examinations of the three mental health professionals from April and June 2015, the July 2015 notice of the Pension hearings, the September 2015 notice of the Pension Board's decision, and the written Pension Decision. The Pension-related discovery was responsive to the discovery plaintiff served on defendants on August 21, 2014, seeking discovery related to Mr. Garrity's request for a retirement disability pension, including Mr. Garrity's medical and psychological records and treatment (01/14/2015 Order). The Pension-related discovery was also responsive to plaintiff's February 16, 2015 request to both defendants for all documents relating to Mr. Garrity's request

for sick leave and/or disability time off and compensation (Pl.'s Mot., Ex. G). The January 14, 2015 order granting plaintiff's motion to compel discovery including Mr. Garrity's medical treatment and pension application, and our orders denying Mr. Garrity's motions to quash, demonstrate that this information was discoverable and should have been produced (*see* docs. ## 228, 254).

Moreover, while defendants ultimately produced some -- but *not all* -- of the Pension-related discovery in April, June and August 2016, this production was not "in a timely manner" under Rule 26(e). As a consequence of the multiple motions to bar, quash, and compel discovery, the close of discovery was repeatedly extended in this case, until on December 15, 2015, the parties represented that they had completed discovery (doc. # 342). Despite representing to the Court that discovery had been completed, neither defendant had produced any of the Pension-related documents by December 15, 2015, even though the Frank, Pua, and Reff reports all had been issued six months earlier, and all of the Pension proceedings had been completed by then; only the written Pension Decision remained to be completed.

## IV.

Defendants make several arguments attempting to show that they were not obligated to produce the Pension-related discovery. As we explain below, none of these contentions excuses defendants' failure to timely produce these documents.

### A.

Defendants rehash their recurrent argument that the Pension-related discovery is not relevant (*see* Cicero's Resp. at 4 (arguing that proceedings before the Pension Board are a "collateral matter completely disconnected from this case"); *see also* Garrity's Resp. at 15). This argument attempts to relitigate a battle that defendants have already lost -- repeatedly. We

determined that this information was relevant in January 2015 and again in April 2015, when we denied defendants' attempts to bar inquiry into and production of Mr. Garrity's medical and mental health records (*see* doc. # 254: 04/28/2015 Order; doc. # 228: 01/14/2015 Order).

Both defendants also contend that the Pension-related discovery is only relevant if the district judge allows into evidence the opinions and testimony of plaintiff's expert, Robert M. Galatzer-Levy, M.D., S.C. (*see* Cicero's Resp. at 4; Garrity's Resp. at 18-21), which defendants have asked the district judge to bar (doc. # 427). We disagree. We view the Pension-related discovery as relevant to plaintiff's claims independent of Dr. Galatzer-Levy's testimony. On January 14, 2015 -- before Dr. Galatzer-Levy issued his opinions -- we held that mental health records from before and after Cicero hired Mr. Garrity, and records related to Mr. Garrity's request for non-active and disability status, were relevant to plaintiff's negligent hiring claim because they may shed light on Mr. Garrity's mental state at the time of his hiring and the shooting (01/14/2015 Order). In addition, to the extent defendants are arguing that the Pension-related documents would not be admissible without Dr. Galatzer-Levy's testimony, it is well-settled that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Defendant cannot withhold discoverable documents on the hope that later those documents will be found inadmissible.

Mr. Garrity also states that his "counsel repeatedly made it clear to plaintiff's counsel that they intended to move to quash any additional requests for future medical/mental health records," and thus Mr. Garrity could not be expected to know that he had a continuing duty to produce and supplement his medical or mental health records (Garrity's Resp. at 15, 18). Indeed, in his August 5, 2016 responses to plaintiff's most recent discovery requests, Mr. Garrity stated that he "has not requested any additional medical records be produced from any of his treating

physicians" beyond "those that were produced to plaintiff on/about March 2015" (Pl.'s Reply, Ex. A: Garrity's Resps. to Pl.'s Discovery at Interrog. No. 9). This position is untenable. If Mr. Garrity (or Cicero) disagreed with this Court's orders requiring them to produce Mr. Garrity's mental health records and records concerning his request for a disability pension, they were free to object to the rulings and ask the district judge to review them. They declined to do so. Mr. Garrity may not ignore the Federal Rules or this Court's orders simply because he does not agree with them. *See, e.g., Farrar v. City of Chicago*, 61 F. App'x 967, 969 (7th Cir. 2003) (holding that a party "cannot willfully disobey court orders just because she believes the [opposing party] has itself acted improperly or because she disagrees with previous rulings").[7]

## B.

Next, defendants argue that they had no duty to produce because plaintiff did not request that they or the Pension Board supplement their production until April 2016, after discovery closed. Mr. Garrity claims plaintiff's counsel was "lying in wait, setting the 'gotcha' trap" by waiting until after discovery had closed to seek additional discovery (Garrity's Resp. at 10-12). Cicero contends plaintiff's counsel is to blame for any discovery delay because they "only chose to follow up after discovery closure deadlines" (Cicero's Resp. at 10-11).

This argument is without merit. It is axiomatic that "a party's obligation to supplement discovery under Rule 26(e) does not end when discovery closes." *MemberSelect Ins. Co. v. Electrolux Home Prod., Inc.*, No. 13 C 4097, 2015 WL 6083201, at *6 (N.D. Ill. Oct. 15, 2015) (quoting Schenkier, J., 09/03/2015 Report and Recommendation). Moreover, defendants could

---

[7]We note that Mr. Garrity's most recent responses to plaintiff's discovery requests claim, for the first time, that his medications affected his ability to understand his discovery obligations (Garrity's Resps. to Pl.'s Discovery at Interrog. Nos. 1-3, 7, 11). Even if Mr. Garrity's understanding was so affected, that did not affect his attorneys' ability to understand the Federal Rules. If anything, such an impaired understanding by Mr. Garrity would put a heightened obligation on his attorneys to help him fulfill his obligations in discovery. To the extent defendants' attorneys turned a blind eye on their client's duty to produce discovery on the Pension Board proceedings and Mr. Garrity's medical treatment, they would share responsibility for the failure to disclose with their clients.

and should have produced almost all the Pension-related discovery before discovery closed on December 15, 2015, as it existed long before that date. And, they should have produced the written Pension Decision promptly after it was issued.

## C.

Defendants also contend that they had no independent duty to supplement their discovery responses. Mr. Garrity argues that plaintiff had an obligation to specifically request supplementation from him or obtain a court order before he had any duty to supplement (Garrity's Resp. at 15-16, 18). This is a specious argument. "Rule 26(e) does not require that a party obtain leave of court before serving a true supplementation." *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2012 WL 5948929 (N.D. Ill. Nov. 27, 2012). Indeed, "[s]upplementation of disclosures is a *duty*, not a *right*." *G & G Closed Circuit Events, LLC v. Castillo*, No. 14 C 2073, 2016 WL 3551634, at *7 (N.D. Ill. June 30, 2016) (emphasis in original); *see also Lujano v. Town of Cicero*, No. 07 C 4822, 2011 WL 6822204, at *4 (N.D. Ill. Dec. 23, 2011) ("discovery supplementation is not a voluntary act indicating good will, but a mandatory duty under Rule 26(e)"). Plaintiff was not obliged to specifically ask Mr. Garrity for supplementation under Rule 26(e) in order to trigger Mr. Garrity's duty to do what the Rule requires.

Cicero does not join Mr. Garrity in his contention that a request from plaintiff or an order from the Court was required to trigger the duty to supplement discovery. However, both Cicero and Mr. Garrity contend that the Pension Board, not defendants, had the burden to produce the Pension-related discovery. Cicero contends that once it provided plaintiff's counsel with the contact information for the Pension Board's attorney and plaintiff issued a subpoena to the Pension Board in February 2015, there was no "logical purpose" for Cicero to produce Pension-related discovery (Cicero's Resp. at 6-8). In addition, on August 5, 2016, Cicero objected to

plaintiff's July 22, 2016 interrogatories on the grounds that "[p]laintiff's counsels were in receipt of the pension board documents as plaintiff had previously issued a subpoena for records directly to the pension board," and "plaintiff's counsel had received or was continuing to receive all relevant documentation directly from the Board attorney pursuant to their subpoena" (Cicero's Resps. to Pl.'s Discovery, Gen'l Objects. 3 & 4). Similarly, Mr. Garrity contends that with the subpoena, plaintiff's counsel "controlled the production of documents relating to the Cicero [P]ension [B]oard and defendant's medical and mental health records," and "had the ability at any time to request supplementation" by the Pension Board of the subpoena (Garrity's Resp. at 1-2, 5-6, 9-10).

This argument ignores both the facts and the law. Cicero's argument ignores the fact that Cicero became a third-party intervenor in the Pension Board proceedings in July 2015. As a party-intervenor in those proceedings, Cicero itself had access to much of the Pension-related discovery and was under an obligation to timely produce and disclose it. Cicero could obtain (or, indeed, possessed) the documents without having to seek them by subpoena; in fact, Cicero does not suggest that it obtained by subpoena the Pension-related discovery it first produced in 2016.

Moreover, as a legal matter, a party's obligations under Rule 26(e) are independent of a third party's obligations under a subpoena; a party "*must* supplement or correct" its disclosure or response in a timely manner unless the information has "otherwise been made known to the other parties . . ." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). By contrast, Federal Rule of Civil Procedure 45, which governs the issuance of subpoenas, does not impose any corresponding duty on third parties to supplement documents produced pursuant to a subpoena. The fact that the Pension Board did more than was required when it produced some supplemental documents in

April 2016, without the need for a subpoena, provides no cover for defendants' failure to meet their discovery obligations.

<strong>D.</strong>

Defendants also argue that they were not required to produce the Pension-related discovery because that information had "otherwise been made known" to plaintiff during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). Mr. Garrity contends that his deposition and the deposition of Mr. Kuratko at the end of April 2015 gave plaintiff "adequate notice" that both his medical care and the Pension Board proceedings were ongoing, and "unquestionably made known" to plaintiff that Mr. Garrity would have additional medical records and examinations (Garrity's Resp. at 17). In the same vein, Cicero contends that plaintiff "is in possession of every single known document complained about in the Sanctions Request," and that the documents Cicero produced on August 18, 2016 "reflected nothing more than those documents already produced by the Pension Board" (Cicero's Resp. at 8- 10).

Contrary to defendants' arguments, plaintiff did not possess the Pension-related discovery until the third party Pension Board produced some documents in April 2016. In fact, Mr. Garrity admits that plaintiff did not have all of the Pension-related discovery as late as June 2016 (Garrity's Resp. at 11). Likewise, plaintiff had not already received all the documents Cicero produced on August 18, 2016 -- such as Cicero's motion to intervene in the Pension Board proceedings and the Pension Decision and Notice of Filing dated January 18, 2016. Even if plaintiff knew that the Pension Board proceedings were not completed at the end of April 2015, all that means is that plaintiff should have expected that at some point there would be more Pension-related documents. Plaintiff did not know when those documents were generated; but

defendants did. It was their duty to supplement the previous discovery by timely producing those Pension-related documents; but defendants did not do so.

**E.**

Finally, defendants contend that they did not have Pension-related discovery to produce. Specifically, Cicero asserts that it did not have "direct possession" of most of the Pension-related documents before it produced them on August 18, 2016 (Cicero's Resp. at 8). Similarly, Mr. Garrity contends that he was not the "custodian" of the Pension-related documents (Garrity's Resp. at 14-15). These arguments badly misconceive the defendants' discovery obligations.

"[I]t is well-settled that discovery obligations require a party to produce more than merely the documents in its possession." *SRAM, LLC v. Hayes Bicycle Grp., Inc.*, 12 C 3629, 2013 WL 6490252, at *4 (N.D. Ill. Dec. 10, 2013). Rule 34 requires that defendants produce all Rule 26(b) discovery in their "possession, custody or control." Fed. R. Civ. P. 34(a)(1). "The concept of 'control' is construed broadly and includes documents that a party has the legal right to obtain on demand." *Dobbey v. Randle*, No. 10 C 3965, 2014 WL 1364428, at *1 (N.D. Ill. Apr. 7, 2014) (internal quotations and citations omitted); *see also Ablan v. Bank of Am. Corp.*, No. 11 C 4493, 2014 WL 6704293, at *4 (N.D. Ill. Nov. 24, 2014) ("The test is whether the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy").

Mr. Garrity had a legal right to the Pension-related documents as a party to the Pension Board proceedings. Indeed, the documents Mr. Garrity produced on June 30, 2016 show that he in fact possessed much of the Pension-related discovery while the Pension Board proceedings were occurring. The documents show that he personally received notice of the hearings before the Pension Board and of the Pension Decision, and he testified at the hearing in August 2015.

And, of course, Mr. Garrity must have received notice when the Pension Board requested that he undergo mental health examinations with Dr. Frank and Dr. Reff in June 2015; and, he learned that Dr. Pua would file a report for the Pension Board by at least May 2015.[8]

Likewise, as a party-intervenor in the Pension Board proceedings, Cicero had a legal right to the Pension-related discovery even though, as Cicero repeatedly reminds the Court, the Pension Board is a separate legal entity from the Town of Cicero (*see, e.g.*, Cicero's Resp. at 6-7). Mr. Garrity's June 30, 2016 document production showed that Cicero intervened in the Pension Board proceedings in July 2015 and that the Town of Cicero was represented by counsel -- Mr. Spataro of Del Galdo Law Group -- in those proceedings (Pl.'s Reply, Ex. E: Pension Decision at 3). Mr. Spataro, as the attorney for party-intervenor Cicero in that matter, received the same notice of Pension Board proceedings and documents as did Mr. Garrity. Indeed, on August 18, 2016, while this motion was pending, Cicero produced Pension-related documents that Mr. Spataro had received -- documents Cicero did not include in its April 14, 2016 production.

Despite ultimately producing those documents, Cicero contends that it did not have "direct possession" of his Pension-related discovery because Mr. Spataro was a "workers compensation contract attorney," whose documents were stored "separately" (Cicero's Resp. at 7-8). The evidence does not support Cicero's contention that it did not possess the Pension-related discovery. The documents produced on June 30, 2016 and August 18, 2016, show that Mr. Spataro was associated with Del Galdo Law Group -- the same office whose lawyers represent Cicero in this lawsuit. It blinks reality for Cicero to say it did not "possess" documents

---

[8]In his August 5, 2016 answers to plaintiff's interrogatories, Mr. Garrity claimed that his April 9, 2015 appointment with Dr. Pua was previously scheduled as a routine medical exam, and that a Pension Board attorney informed him several weeks later that the Pension Board would consider Dr. Pua's medical examinations and opinions (Garrity's Resps. to Pl.'s Discovery at Interrog. No. 4).

that its own attorney in the Pension Board proceedings had received; it would be even more far-fetched to say that Cicero lacked "custody or control" over those documents.

Cicero's attorneys in this proceeding knew that Mr. Spataro was representing Cicero in the Pension Board proceedings, and therefore have no excuse for failing to seek and obtain Mr. Spataro's Pension Board discovery and timely produce it as required by Rule 26(e). Yet, Cicero's efforts in producing this information fell short as recently as August 5, 2016, when in response to plaintiff's July 22, 2016 interrogatories, Cicero asserted that "[t]here are no additional documents to produce in the Town's possession that have not already been produced" (Pl.'s Reply, Ex. F: Cicero's Resps. to Interrogs. Nos. 2, 4, 5, 6, 8, 12). Mr. Spataro's files certainly came within Cicero's obligation to produce discovery that was under its "possession, custody or control," and should have been timely produced.

In sum, defendants were obligated under the Federal Rules to timely disclose and produce the Pension-related discovery, and the excuses they offer for their failure to do so are without merit. Defendants' failure to provide the required Rule 26(e) supplementation constitutes sanctionable conduct. Thus, we next turn to a discussion of what sanctions are warranted to redress defendants' unjustified violation of the discovery rules.

**V.**

Under Federal Rule of Civil Procedure 37(c), if a party fails to provide information or identify a witness as required by Rule 26(e):

> the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The sanctions in Rule 37(b)(2)(A)(i)-(vi) include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [and] (vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

"District courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012). In applying the "wide latitude" given to district courts in fashioning appropriate sanctions for discovery violations, *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011), we are mindful that "[i]n admeasuring sanctions for violating the rules of pretrial discovery, as in other areas of the law, the punishment should fit the crime." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751-52 (7th Cir. 2005). To ensure sanctions are "proportionate to the circumstances surrounding a party's failure to comply with discovery rules," we consider, among other things, "the frequency and magnitude of the party's failure to comply . . . , the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (internal citations and quotations omitted).

As we already have found, defendants cannot escape Rule 37 sanctions on the ground that their conduct was substantially justified; it manifestly was not. Thus, we turn to plaintiff's claims of prejudice. The determination as to whether a Rule 26(e) violation was "harmless" -- *i.e.*, did not cause prejudice -- is entrusted to the broad discretion of the district court. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff argues that she was prejudiced by defendants' failure to produce the evaluations and reports of Drs. Frank, Pua and Reff because her psychologist expert, Robert M. Galatzer-Levy, M.D., S.C., did not have the opportunity to see their reports (Pl.'s Mot. at 17-18).[9] Dr. Galatzer-Levy prepared an original and a supplemental report sometime between May 2015 and his deposition on July 16, 2015 (Garrity's Resp., Ex. 11: Galatzer-Levy Dep., Ex. 1: Galatzer-Levy Report at 5 and Galatzer-Levy Supp'l Report).[10] However, prior to the deposition, plaintiff was unaware that Drs. Frank, Pua and Reff had examined and completed reports on Mr. Garrity between April and June 2015. Dr. Galatzer-Levy offered opinions concerning Mr. Garrity's mental health condition both prior to his hiring by Cicero and during his time as a Cicero police officer. Drs. Frank's, Pua's, and Reff's reports addressed the same subject. We agree with

---

[9] Plaintiff also contends that she was prejudiced because "[d]efendants were able to convince Judge Alonso to grant their summary judgment motion on the negligent hiring claim (a huge part of Plaintiff's case) without having disclosed that Garrity had seen multiple doctors for evaluation on the very question at issue, namely, when exactly his PTSD originated" (Pl.'s Mot. at 18). However, the district court granted summary judgment to Cicero on plaintiff's negligent hiring claims not on the basis of when Mr. Garrity's PTSD originated, but based on a finding that the Illinois Tort Immunity Act immunized Cicero from those claims (doc. # 336: 12/01/2015 Mem. Op. and Order at 1). Plaintiff has not shown how the failure to produce the Pension-related discovery influenced that ruling. Regardless, the district court ultimately reinstated plaintiff's negligent hiring claim, holding that, contrary to its previous ruling, a municipal employer would not have derivative immunity for negligent hiring claims (*Id.* at 3).

[10] Dr. Galatzer-Levy's initial report is undated, but it lists the documents that he relied upon in drafting his report, which included a deposition of Robert B. Hughes, PsyD., from May 14, 2015 (Galatzer-Levy Report at 5). Mr. Galatzer-Levy's supplemental report is likewise undated, but it was completed before his deposition (Galatzer-Levy Supp'l Report).

plaintiff that she was prejudiced by the failure of her retained mental health expert to have access to those reports prior to his deposition.

In her motion, plaintiff does not propose a sanction to remedy this prejudice, but in her reply brief, she asks the Court to compel Mr. Garrity to submit to a Rule 35 examination by Dr. Galatzer-Levy (Pl.'s Reply at 22-23). Dr. Galatzer-Levy did not examine Mr. Garrity before completing his reports, because -- according to plaintiff -- "Defendants refused Plaintiff's request to make Garrity available for an interview" (Pl.'s Mot. at 18). Plaintiff never sought a court order for Dr. Galatzer-Levy to examine Mr. Garrity pursuant Federal Rule of Civil Procedure 35. However, plaintiff now contends that "[h]ad all the cards been on the table," she would have "sought an evaluation or, at a minimum, would have been able to provide Dr. Galatzer-Levy with considerably more information to consider" (*Id.*). We granted defendants leave to file a joint sur-reply brief to address plaintiff's requests for sanctions that were first raised in her reply brief (doc. # 399).[11]

Rule 35 authorizes a district court to order, upon a motion for good cause, an examination of a litigant whose physical or mental condition is in controversy in the litigation. Fed. R. Civ. P. 35(a)(1-2). Defendants argue that Mr. Garrity's mental state is not in controversy because they have not made it an issue (doc. # 496: Defs.' Joint Sur-Reply at 4-5). However, Rule 35 applies to both plaintiffs and defendants, and "the District Court ha[s] power to apply Rule 35 to a party defendant in an appropriate case." *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964). Here, plaintiff's negligent hiring claims against Cicero put Mr. Garrity's mental health in controversy.

---

[11]In their sur-reply, defendants initially argue that plaintiff's request for a Rule 35 examination is waived because it was raised for the first time in plaintiff's reply brief (doc. # 496: Defs.' Joint Sur-Reply at 3). However, defendants filed a sur-reply to address plaintiff's request for additional sanctions in her reply brief, thus eliminating any prejudice resulting from plaintiff first raising this argument in the reply. Moreover, the choice of sanctions is ultimately within the Court's discretion; it is not within the power of a party to "waive" the Court's selection of the appropriate sanction(s).

Nevertheless, we find that plaintiff has not linked defendants' failure to disclose the reports and examinations of Drs. Reff, Pua and Frank to her decision not to seek a Rule 35 examination. Rather, plaintiff's argument for a Rule 35 examination -- that she may have decided to seek a Rule 35 order for Dr. Galatzer-Levy to examine Mr. Garrity had "all the cards been on the table" -- echoes the defendants' unsuccessful argument for a Rule 35 examination in *Miksis v. Howard*. In that case, the defendants argued that the district court's "denial of a medical examination [wa]s in error because . . . they did not have reason to request a medical examination until they were 'sandbagged' . . . when they received notice of plaintiff's proposed expert testimony . . ." *Miksis v. Howard*, 106 F.3d 754, 758 (7th Cir. 1997). Like the defendants in *Miksis*, however, plaintiff's "claims that [she] w[as] sandbagged are belied by the facts," including that plaintiff knew that Mr. Garrity's medical condition was at issue (indeed, plaintiff put it in controversy), and plaintiff nevertheless made a "conscious decision not to move for a medical examination." *Id.* at 758-59.

Plaintiff has not explained why the "cards on the table" revealed by the Pua, Reff and Frank reports would have led to a different choice. We find it hard to fathom how revelation of that information would have made a difference, as the decision not to pursue a Rule 35 examination must have preceded the preparation of Mr. Galatzer-Levy's report in May 2015 -- which itself preceded the Frank, Pua and Reff reports. Indeed, we note that plaintiff did not raise a request for a Rule 35 examination in the initial sanctions motion, but waited until her reply brief to do so. As we have made clear, we in no way condone defendants' conduct. But, plaintiff is not entitled to a "do over" for strategic choices she earlier made that are unconnected to defendants' discovery violations.

Still, Dr. Galatzer-Levy was entitled to the Frank, Pua, and Reff reports before his deposition, so that Dr. Galatzer-Levy could make an informed decision as to whether to prepare a supplemental report in light of the additional medical examinations. To remedy this prejudice, we will re-open discovery to allow Dr. Galatzer-Levy the opportunity to examine the reports of Drs. Reff, Pua and Frank, and determine whether, based on that new information, he wishes to complete a supplemental report. We recommend that any supplemental report be served within ten days after the district judge's ruling on the motions *in limine* regarding Dr. Galatzer-Levy's testimony.

## B.

Plaintiff also argues that she was prejudiced because her counsel were denied the opportunity to question Mr. Garrity about several matters that plaintiff did not discover until the disclosures in April, June and August 2016, including Mr. Garrity's August 5, 2016 responses to plaintiff's interrogatories (Pl.'s Reply at 22). Specifically, plaintiff contends that she was entitled to investigate: (1) the accounts of the shooting that Mr. Garrity relayed to Drs. Reff, Frank and Pua; (2) the amendment to Mr. Garrity's pension application to include a request for a "not on duty" pension; (3) Mr. Garrity's testimony to the Pension Board; and (4) the date discrepancy between the Pension Decision produced by Mr. Garrity on June 30, 2016, which showed the decision was issued on June 14, 2016, and the copy produced by Cicero on August 18, 2016, which is dated January 18, 2016 (*Id.* at 10-14). To cure this prejudice, plaintiff asks in her reply brief that this Court compel a further deposition of Mr. Garrity (*Id.* at 22). Defendants respond that "[t]here is no basis to re-depose" Mr. Garrity because "Garrity never altered his position that his PTSD occurred as a result" of the Munive shooting (Defs.' Joint Sur-Reply at 6-7).

We agree that plaintiff should be permitted to question Mr. Garrity on the discovery she received in April 2016 and after. We are mindful that Mr. Garrity already has been deposed three times in this case -- in April 2014, April 2015, and sometime after October 2015, when this Court ordered Mr. Garrity to sit for a reconvened deposition (doc. # 333: 10/21/2015 Order).[12] But, Mr. Garrity has no legitimate basis to complain about a further deposition, which is the result of his own misconduct.

Therefore, we find that discovery should be reopened for Mr. Garrity to submit to another deposition, which should not exceed three hours. Plaintiff may question him on any disclosures she received in April, June and August 2016 that had not been previously disclosed to plaintiff. In addition, before the deposition, Cicero should produce transcripts from the two Pension Board hearings on Mr. Garrity's application, and Mr. Garrity should produce his amended pension application, if one exists.[13] Re-opening discovery for these limited purposes is tailored to cure the prejudice described above caused by defendants' failure to produce the Pension-related discovery. *See Fid. Nat. Title*, 412 F.3d at 751-52 ("sanctions for violating the rules of pretrial discovery . . . should fit the crime"). In light of his discovery violations, we order Mr. Garrity to bear the costs of his own re-deposition, including attorneys' fees.

## C.

Despite the fact that the prejudice we have identified can be cured by the foregoing measures, plaintiff argues that additional sanctions are necessary to punish defendants' misconduct and deter future abuses (Pl.'s Mot. at 18, 21). Specifically, plaintiff seeks: (1) a jury

---

[12]The parties do not provide the date of this third deposition, but it appears uncontested that the third deposition occurred before plaintiff received the April 2016 discovery from the Pension Board.

[13]Defendants contend that no amended pension application exists (Cicero's Resp. at 9). Mr. Garrity states the Pension Board verbally offered the amendment as a *pro forma* administrative change to his pension application, and that "a written amended application to the pension board *in all likelihood* does not exist and never existed" (Garrity's Resp. at 13-14) (emphasis added).

instruction that "the Court has determined that the Defendants made improper efforts to conceal from the Plaintiff certain documents relating to Garrity's mental health and employment status;" and (2) an order barring defendants from relying on or referring to Dr. Pua, Dr. Reff and Dr. Frank at trial (Pl.'s Mot. at 20-21; *see also* Pl.'s Reply at 21-22).

In the Seventh Circuit, there is a "well-established public policy favoring hearing cases on the merits." *Rice*, 333 F.3d at 786. However, far from plaintiff's contention that they seek only "relatively modest sanctions," an instruction from the Court that defendants "made improper efforts to conceal information" is anything but modest. In general, "specific instances of misconduct of a witness intended for the purposes of attacking or supporting the witness' character for truthfulness may not be proved by extrinsic evidence." *Hollins v. City of Milwaukee*, 574 F.3d 822, 828-29 (7th Cir. 2009) (citing Fed. R. Evid. 608(b)). There is an important reason for excluding this evidence: to avoid the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Id.*; *see also* Fed. R. Evid. 403. An instruction that is necessary to redress prejudice caused by a discovery violation would be warranted, despite these risks. But plaintiff has offered no explanation of how this instruction is needed to redress the prejudice caused by defendants' discovery violations. The requested instruction is simply an unwarranted request to put a judicial thumb on the scale to tip the case plaintiff's way, which we will not approve.

Likewise, for two reasons, we will not bar defendants from relying on or referring to Drs. Pua, Reff and Frank at trial. *First*, defendants do not intend to call Drs. Pua, Reff or Frank as a witness (*see* doc. # 492: Final Pretrial Order at 41-53). Thus, there is no reason for the Court to order that defendants should be barred from relying on these witnesses at trial. *Second*, although generally a party that fails to disclose evidence "is not allowed to use that information . . . at

trial," *see* Fed. R. Civ. P. 37(c)(1), that failure may be harmless if the other party ultimately receives the documents or discovery it seeks. *See Johnson v. Hix Wrecker Serv., Inc.*, 528 F. App'x 636, 640-41 (7th Cir. 2013) (upholding the district court's determination that the defendant's delayed disclosure was harmless because the plaintiff had access to the materials before trial); *see also Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 888 (7th Cir. 2004) (upholding the district court's finding that discovery violation was harmless where the opposing party had adequate notice of the discovery). Here, plaintiff received the reports of Drs. Frank, Pua and Reff six months ago, in April 2016.

### D.

While we have identified measures to cure the prejudice plaintiff has suffered, courts may also impose fines to be paid to the court "to remedy the harms of discovery violations." *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003). We have recommended that a party pay a fine to the Court in only one other case in the last eighteen years, where we found it necessary "to impress upon" a defendant the "seriousness" of his discovery obligations. *See Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *6 (N.D. Ill. Oct. 20, 2000) (recommending fine payable to the Court of $10,000.00 as a result of a defendant's failure to adequately discharge his responsibility to institute a program to preserve documents, even though that failure did not result in prejudice to the plaintiff). The instant case also compels this Court to recommend that the district judge impose such a fine.

Courts and commentators have long decried the failure of parties to act reasonably in the discovery process, and its effect on the cost of litigation. As a reminder to the parties that it is not the duty of courts alone to exercise control over the discovery process, in December 2015 Federal Rule of Civil Procedure 1 was amended to state that the rules should be used "by the

court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). The commentary to that amendment emphasizes that cooperation in the discovery process is consistent with "[e]ffective advocacy." *Id.*, Comm. Notes to 2015 Amend.

We regret that in this case, the defendants ignored these admonitions in the way they addressed the Pension-related discovery. As we have found, the failure to make the required supplementation in a timely manner was unjustified. Defendants insist, even in the face of court orders, that the Pension-related discovery was not relevant and they had no duty to produce it. During the briefing on the motion, defendants continued to conjure new -- and baseless -- excuses for disregarding their discovery obligations. This conduct compounds their violations, and underscores that additional meaningful sanctions are needed to impress upon defendants the seriousness of their duties.

Therefore, we recommend that the district judge assess a $5,000.00 fine against Mr. Garrity, and a $5,000.00 fine against Cicero, to be paid to the court. This amount is reasonable in light of similar fines imposed for discovery violations. *See*, *e.g.*, *Maynard*, 332 F.3d at 470 ($3,500.00 fine); *Classic Amenities, Inc. v. Verbeke*, No. 00 C 3326, 2001 WL 630709, at *2 (N.D. Ill. June 4, 2001) (assessing $5000.00 fine -- $2,500.00 for each defendant); *Danis*, 2000 WL 1694325, at *6 (recommending $10,000.00 fine).

## CONCLUSION

For the foregoing reasons, we respectfully recommend that plaintiff's Motion for Sanctions (doc. # 363) be granted. We recommend that the following sanctions should be imposed:

Discovery should be re-opened to allow: (1) Dr. Galatzer-Levy to examine the reports of Drs. Reff, Pua and Frank, and determine whether, based on that new information, he wishes to complete a supplemental report; (2) plaintiff to re-depose Mr. Garrity, for a period not to exceed three hours, to question him on any disclosures she received in April, June and August 2016 that had not been previously disclosed to plaintiff, with Mr. Garrity to bear the fees and costs of the deposition; (3) Cicero to obtain and produce transcripts from the two Pension Board hearings on Mr. Garrity's application; and (4) Mr. Garrity to produce his amended pension application, if one exists. We also recommend a fine of $5,000.00 against Mr. Garrity, and $5,000.00 against Cicero.

Specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this Order is served. Fed. R. Civ. P. 72(b). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *See Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004) (citing *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)). [14]

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: October 14, 2016**

---

[14]Plaintiff also makes a footnote argument that the medical documents she seeks are not confidential and should be made part of the public record (Pl.'s Mot. at 11 n.4). As we said in open court on July 21, 2016, we will not address this issue at this time. For now, we address only the motion for sanctions.